## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

ZACHARY D. BATTLE,        *

Plaintiff,        *

v.        *        Civil Action No. PJM-22-1064

J. YUTZY, CO II, *et al.,*        *

Defendants.        *

*** *** ***

## MEMORANDUM OPINION

Zachary D. Battle, who previously was incarcerated at North Branch Correctional Institution ("NBCI") filed suit pursuant to 42 U.S.C. § 1983, alleging he was subjected to excessive force and denied medical care in violation of the Eighth Amendment to the United States Constitution and that Defendants failed to adequately train and supervise correctional staff in violation of the Fourteenth Amendment to the United States Constitution. ECF No. 1 at 8-10. He also brings state law negligence claims. *Id.* at 9. Battle names as Defendants Correctional Officer J. Yutzy, Correctional Officer A. Carr, Facility Administrative Remedy Procedure ("ARP") Coordinator, Warden Keith K. Arnold, and IID Investigator John/Jane Doe. ECF No. 1 at 3-4. Battle is seeking compensatory and punitive damages as well as declaratory and injunctive relief. ECF No. 1 at 12.

Defendants Yutzy, Carr and Arnold moved to dismiss the claims or alternatively for summary judgment in their favor. ECF No. 14. Battle was advised of his right to respond to the motion. ECF No. 15. He moved for extension of time to respond to the dispositive motion and requested the appointment of counsel. ECF No. 16. On June 27, 2023, Battle's motion for extension of time was granted and his motion to appoint counsel denied. ECF No. 17. The Court's

June 27, 2023 Order was returned as undeliverable because Battle was released from confinement. ECF No. 19. The Court directed Defendants provide Battle's last known address, if known, to the Court. ECF No. 22. Defendants provided Battle's updated address (ECF No. 22) and on August 17, 2023, the Court entered an Order directing Defendants remail their dispositive motion, among other things to Battle at his updated address, and provided Battle 28 days to file any opposition response. ECF No. 23. Defendants certify that a copy of the Court's Order and the dispositive motion was mailed to Battle on August 25, 2023. ECF No. 24. To date, he has not filed an opposition to the pending dispositive motion.

The Court has reviewed the pleadings and will resolve the motion without a hearing. Local Rule 105.6 (D. Md. 2023). For the reasons stated below, Defendants' motion to dismiss, or in the alternative for summary judgment, is granted and the Complaint dismissed for failure to exhaust administrative remedies.

## BACKGROUND

In his verified Complaint, Battle explains that on June 16, 2020, while incarcerated at NBCI, he was waiting for delivery of his meal tray, when he asked Officer Yutzy if he would ask the case manager for a copy of Battle's prison account statement. ECF No. 1 at 4. Yutzy replied that Battle was lucky he was getting his meal tray because he had been acquitted of a rule infraction and stated that the hearing officer, Farris, was never "one of us." *Id.* Yutzy also stated that if it had been him, things would have gone differently. *Id.* Battle tried to get Carr's attention to report Yutzy's threat. *Id.* Yutzy returned to Battle's cell and dispersed an entire can of a chemical agent into the cell while Carr looked on. *Id.* In his view, Yutzy dispersed the chemical agent maliciously because he was upset at the result of the adjustment hearing. *Id.* at 6.

Battle retreated to the back of his cell. *Id.* at 4. The chemical agent caused pain and burning

2

and Battle requested to be taken to medical, advising Yutzy and Carr that he was asthmatic and was suffering chest pains and struggling to breathe. *Id.* at 5. Battle was not provided anything to ameliorate the effects of the chemical agent and was instead transferred to segregation. *Id.* Battle requested Yutzy and Carr provide him eye flush, a decontamination shower, and a change of clothes, but each request was denied. *Id.* Battle states that he filed numerous complaints against Yutzy for his harassment and conduct toward Battle, but the ARP Coordinator, Warden Arnold, and Carr failed to properly investigate those complaints. *Id.* at 5-6. Battle also alleges that Carr and Arnold failed to discipline or restrain Yutzy as to his harassment of Battle. *Id.* at 6.

Battle claims that Carr, Yutzy, and other unidentified correctional staff who Battle filed complaints against indicated their support for each other and that they would "get" Battle in order to provoke a confrontation. ECF No. 1 at 6. Battle alleges that Warden Arnold was aware of his complaints based on the ARPs he filed but did nothing and therefore tacitly approved the alleged conduct. *Id.* at 7. Battle claims that it is common for Defendants to ignore abuse by staff and complaints filed by inmates. *Id.*

F. Todd Taylor, Jr., Executive Director of the Inmate Grievance Office ("IGO") avers that Battle did not file a grievance to the IGO regarding the events complained of in his Complaint. ECF No. 14-2, ¶ 2.

**STANDARDS OF REVIEW**

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint

3

as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Battle was placed on notice that Defendants sought summary judgment. ECF No.14. Accordingly, the Court treats those motions as ones for summary judgment. *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in

the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## DISCUSSION

Defendants argue, among other things, that the Complaint must be dismissed as Battle failed to exhaust his administrative remedies. This Court agrees, and as such, need not consider Defendants' additional defenses.

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence. It provides that a plaintiff is not entitled to judicial relief

until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Therefore, a claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (recognizing that exhaustion provides prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits. *Chase*, 286 F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming

dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 91 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original). But, the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with

7

the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In *Ross*, 578 U.S. at 635, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 637. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 635-36. And, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

In Maryland, there is an established administrative remedy procedure that applies to all Maryland prisons. *See generally* Md. Code (2017 Repl. Vol.), §§ 10-201 *et seq.* of the Correctional Services Article ("C.S."); Code of Maryland Regulations ("COMAR") 12.07.01B(1) (defining ARP). Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or

8

confinement." COMAR 12.07.01.01(B)(7). To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any DOC official or employee. C.S. § 10-206(a).

When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO. Further, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b).

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official," COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[1] When filing with the IGO, a prisoner is required to include copies of the following: the initial

---

[1] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

9

request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a).

If a grievance filed with the IGO is determined to be "wholly lacking in merit on its face," the IGO may dismiss it "without a hearing. . . ." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code § 10-206(a)(1) of the State Government Article.

A decision of the administrative law judge denying all relief to an inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2),(c); COMAR 12.07.01.10(B).

The statute provides for judicial review. C.S. § 10-210. But, "[a] court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies provided" in Title 10, Subtitle 2 of the Correctional Services Article. C.S. § 10-210(a).

The record before the Court demonstrates that Battle did not file an appeal with the IGO regarding the events outlined in his Complaint and he has not provided any explanation for his

failure to do so. As such, I find that Battle failed to exhaust his administrative remedies and his federal claims must be dismissed without prejudice. The Court will not consider Battle's state law claims. "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966).

## CONCLUSION

By separate Order, Defendants' Motion to Dismiss, or in the Alternative for Summary judgment is GRANTED and the Complaint is dismissed without prejudice for failure to exhaust administrative remedies.

9/26/23

Date

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

11